(Decided March 8th, 1859.)

---

## John R. Giles vs. Bruce Fauntleroy.

A guest at a hotel paid his bill at 12 o'clock, which payment entitled him to the use of his room for the *entire day;* he then informed the clerk he intended leaving, and requested the latter to send his trunk, at 4 o'clock, on the same day, to a particular steamer, and left with him money for the porterage fee; the clerk undertook to do this, and delivered the trunk to the porter usually employed for such purpose, with directions to carry it to the steamer named by the guest, and paid the porter his fee.  HELD:

That the *proprietor* of the hotel was responsible for the loss which resulted, from the fact, that through the *negligence* or *mistake* of the clerk or por-

Giles *vs.* Fauntleroy.

ter, the trunk was taken to the office of the *wrong steamer*, and there broken open and its contents stolen.

Where a prayer neither points nor refers to the *pleadings*, the correctness of its being rejected or granted, depends, not upon the state of the *pleadings*, but upon the *evidence* to which alone it refers.

An inn-keeper is responsible for the *baggage* of his guest, but a Colt's revolver and silver tea spoons are not embraced in the term "*baggage*," nor are *surgical instruments*, unless the guest is a physician, or a surgeon, or a student of medicine.

APPEAL from the Court of Common Pleas.

This was an action on the case, brought on the 12th of June 1855, by the appellee against the appellant, *as an inn-keeper*, to recover the value of a trunk and its contents, alleged to have been lost whilst the plaintiff was a guest at the defendant's inn.  Plea, *non cul.*

In the course of the trial, two exceptions were taken by the defendant to the rulings of the court below, (MARSHALL, J.,) which, with all the facts of the case, are fully stated in the opinion of this court.  The verdict and judgment were in favor of the plaintiff, and the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Edw. Holloway* and *T. Yates Walsh* for the appellant, argued:

1st. That in order to charge the defendant as the keeper of a common inn, the plaintiff must aver and show, that the goods were lost or stolen whilst he was a *guest* at the inn, and there is no proof in this case to support such an averment.  6 *H. & J.*, 47, *Towson vs. Havre-de-Grace Bank.*

2nd. That the plaintiff having declared specially against the defendant as an inn-keeper, it was not competent for the court to instruct the jury, under the pleadings, that if they found a collateral undertaking on the part of the defendant, whereby he undertook to deliver the plaintiff's goods at a place without the inn, that the defendant was liable in this action upon such undertaking.  6 *H. & J.*, 47.  3 *Hill*, 485,

*Grinnell vs. Cook.* 5 *Term Rep.*, 389, *Hyde vs. Mersey &* *Trent Nav. Co.* 8 *Coke's Rep.*, 32, *Calye's Case.* 3 *Cro. Jac.*, 188, *Gelley vs. Clerk.* *Bac. Abr., title Inn, Letter C*, 5. *Story on Bailments, secs.* 479, 483, 487, 535.

3rd. That there is no evidence that the defendant undertook to carry and deliver the plaintiff's goods at any place without the inn. The clerk of the inn-keeper must act within the scope of his authority, and he had no power to make such a contract to bind his principal.

4th. That if the defendant be liable in this action, upon such an undertaking, then he is liable only as a mere mandatory or private carrier, and the *onus probandi* is on the plaintiff to show that the loss has been by the negligence of the defendant or his servants. 8 *Carr & Payne*, 212, *Brind vs. Dale.* 11 *Wend.*, 25, *Beardslee vs. Richardson.* *Story on Bailments, secs.* 457, 479, 483, 487. The proof shows that the plaintiff was as much negligent as the defendant, and negligence on his part will prevent a recovery. 24 *Barb.*, 384, *Fowler vs. Dorlon.*

5th. That the plaintiff having, on the morning of the 17th of March 1855, given notice to the agent of the defendant of his intention to quit the inn, and, also, at the time of such notice, having paid his bill, his relation as a guest was destroyed, and the defendant is not liable in this action for any loss that may have subsequently occurred. 5 *Sandf.*, 242, 247, *Wintermute vs. Clark.* The relation of landlord and guest was dissolved when the latter paid his bill, and the latter's liability from that time was that of a mere bailee only. *Story on Bailments, secs.* 457, 487. 26 *Verm.*, 316, *McDaniels vs. Robinson.*

6th. That if liable to any extent, the defendant is not liable for goods not designed for *use* or *personal convenience* on the journey; such articles do not come within the meaning of *"baggage,"* for which alone the inn-keeper is responsible. 11 *Md. Rep.*, 434, *Pettigrew vs. Barnum.* Even a common carrier is not liable for valuable articles not considered as baggage, unless he is informed of their being in the trunk.

Giles *vs.* Fauntleroy.

*Chas. Marshall* for the appellee.

1st. No exception was taken by the defendant to the proof of the contents of the trunk, or to the proof of their loss, and since the act of 1854, ch. 323, it is contended that as to a part of the property proved to have been lost, for which an inn-keeper, as such, would not have been responsible at common law, he is now responsible by the provisions of that act. Moreover, there is no question raised by either exception as to the pleadings; on the contrary, the defendant's prayer concedes a liability on his part, other than the law would impose, if this be regarded as an action against him as inn-keeper simply: for not only did the defendant fail to except to the proof of the value and loss of the articles for which, as *inn-keeper* only, he would not have been responsible, but, by his prayer, he concedes that he would have been responsible for the loss of these same articles, and that, too, *after* they had been carried away from the *inn,* and after the plaintiff had ceased to be a guest thereat, provided the loss occurred by collusion or fraud of the defendant. Under these circumstances, no issue with regard to the pleadings is raised by the exceptions, and the correctness of the instructions given, and of the refusal to grant the defendant's prayer, is to be determined by a consideration of the law applicable to the cases assumed in these prayers, and without reference to the sufficiency of the pleadings to meet these cases. The point as to the pleadings cannot now be made. *Act of 1825, ch. 117.* 1 *Gill,* 227, *Leopard vs. Ches. & Ohio Canal Co.* 4 *Gill,* 421, *Stockton vs. Frey.* 7 *Gill,* 5, *Brooke vs. Waring.* 1 *Md. Rep.,* 207, *Dorsey vs. Dashiell.* 9 *Md. Rep.,* 116, *Owings vs. Jones.* And even if the court should be of opinion that the exceptions raise any question as to the sufficiency of the declaration, it is contended that the evidence is pertinent to the second count, which is a special count for negligence in performing a duty assumed by the defendant, and that the ruling of the court below correctly declares the law applicable to the case made in the second count, and sustained by the evidence. *Coggs vs. Bernard,* 1 *Ld. Ray.,* 909, and 1 *Smith's Lead. Cases,* 244, *and notes.* 5 *Blackf.,* 323, *Hill*

17        v. 13.

*vs. Owen. 25 Wend.,* 642, *Hawley vs. Smith. 26 Verm.,* 340, *McDaniels vs. Robinson.* His undertaking was upon a sufficient consideration, for the hypothesis of the plaintiff's prayer and the allegation of the second count both assume that the property was lost by the negligence of the defendant, in the performance of what he had undertaken to perform, and the trust and confidence induced by this undertaking is a sufficient consideration to create a duty to act without negligence; (*Coggs vs. Bernard. 2 Bing.,* 468, *Whitehead vs. Greetham. 1 Esp.,* 64, *Wilkinson vs. Coverdale. 1 M. & Rob.,* 38, *Beauchamp vs. Powley. 2 Adol. & Ellis,* 256, *Doorman vs. Jenkins;*) and he may be sued in *assumpsit* or case for the breach of that duty. 4 *Cush.,* 120, *Dickinson vs. Winchester.*

2nd. But even if the correctness of the instruction is to be determined with reference to the pleadings, it is right. The ground of an inn-keeper's liability is the profit he received from keeping the goods or entertaining the guest, if the keeping of the goods yield no profit. 5 *H. & J.,* 52, *Towson vs. Havre-de-Grace Bank.* 9 *Pick.,* 285, *Mason vs. Thompson.* 2 *Ld. Ray.,* 866, *Yorke vs. Grenaugh.* 25 *Wend.,* 653, *Peet vs. McGraw.* In this case the defendant received pay from the plaintiff for the *entire day* of the plaintiff's departure, and the act by the plaintiff, in calling to pay his bill, was in strict accordance with the rules of the inn. The inn-keeper ought not, on grounds of public policy, to be discharged from liability by the fact of a guest leaving, under the circumstances described in this case, for a guest could not otherwise be safe. He could not get his property without paying his bill, and he could not pay his bill without discharging the liability of the inn-keeper, if the doctrine contended for be correct. Although it is conceded, that to charge a defendant, as inn-keeper, for the loss of goods, the loss must occur while the goods are in his custody as inn-keeper, and, as a general rule, while they are in the curtilage, yet it is insisted, that the inn-keeper could always extend his liability by his own act, and that the *custody* required by the rule is to be understood according to the custom of the inn and the duties as-

sumed by the inn-keeper, which, it is submitted, are more extensive now than when guests alighted at or departed from the door of the inn.　8 *Coke*, 32, *Calye's Case*, in 1 *Smith's Lead. Cases*, 171, *and notes*.　*Edwards on Bailments*, 405.　1 *Parson's on Cont.*, 623, 627, 631.　14 *Johns.*, 175, *Clute vs. Wiggins*.　4 *Cush.*, 119, *Dickinson vs. Winchester*.　26 *Verm.*, 316, 341, *McDaniels vs. Robinson*.　2 *Kent*, 758. 21 *Wend.*, 283, *Piper vs. Manny*.

3rd. The defendant's prayer was properly rejected, because it was erroneous in view of other facts in evidence which it does not bring before the court.　3 *G. & J.*, 450, 462, *Bosley vs. Chesapeake Ins. Co.*　It requires the jury to find that the defendant was *licensed*, which the law presumed, and which also was not necessary to make him responsible.　1 *Gill*, 503, *Casey's lessee vs. Inloes*.　It also submits the *legal* question of the *regularity* of the license to the jury.　It is erroneous in excusing the defendant for loss while the property was in the custody of his servant, provided there was no *fraud* or *collusion* of the defendant; *negligence* would have made him liable.

4th. The objection that the property lost was, in part, plate, and something other than baggage, cannot be sustained.　It is respectfully submitted, that the cases cited by this court, to sustain the *dictum* in the case of *Pettigrew vs. Barnum*, 11 *Md. Rep.*, 434, do not establish the doctrine embraced in the *dictum*, and that the doctrine is opposed by a large number of cases.　It is also respectfully submitted, that this court was not called upon in that case to decide directly upon the question of the kind of property, for the loss of which an inn-keeper is responsible.　To sustain this view, the following authorities are relied on:　5 *H. & J.*, 47, *Towson vs. Havre-de-Grace Bank*.　*Story on Bailments*, secs. 470, 479.　1 *Parson's on Cont.*, 623, 628.　1 *Starkie's Rep.*, 249, *Farnworth vs. Packwood*.　5 *Term Rep.*, 273, *Bennet vs. Mellor*.　2 *Barn. & Adol.*, 803, *Kent vs. Shuckard*.　25 *Wend.*, 642, *Hawley vs. Smith*.　*Calye's Case* in 1 *Smith's Lead. Cases*, 172.　26 *Verm.*, 333, *McDaniels vs. Robinson*.　5 *Barb.*, 560, *McDonald vs. Edgerton*.　14 *Johns.*, 175, *Clute vs. Wiggins*.　2 *Kent*, 758.

ECCLESTON, J., delivered the opinion of this court.

This is an action on the case, instituted in the Court of Common Pleas for Baltimore city, by the appellee against the appellant, to recover the value of a trunk and its contents, alleged to have been lost whilst the plaintiff was a guest at the defendant's inn.

The declaration contains two counts, each charging the defendant as an inn-keeper.

The plea is not guilty.

At the trial it was admitted that the plaintiff lodged, as a guest, at the hotel of the defendant; that the articles enumerated in the list annexed to the agreement were in the plaintiff's trunk at the time the same was alleged to have been broken open, and that the value of said articles is the value set opposite to them, respectively, in said list.

The list alluded to contained—

| | |
|---|---|
| 1 Prime case surg. instruments, - - - - | $30.00 |
| 1 Tonsil cutter, - - - - - - - | 5.00 |
| 1 Large sized Colt's pistol, - - - - | 30.00 |
| 1 Dozen silver tea spoons, - - - - - | 15.00 |
| 1 Pocket bible, gold clasp, - - - - - | 2.50 |
| 1 Travelling trunk, - - - - - - | 5.00 |

And sundry articles of clothing. The amount of the whole list being $102.55.

A witness named Gwinn testifies, that on or about the 17th of April 1855, as the agent of the plaintiff, he called upon the defendant in relation to the loss of the plaintiff's trunk, when he stated that it had been delivered to Barnum's porter, according to the usage of the house. And that if there was any loss, he, defendant, would hold Barnum's porter answerable for it. This conversation was about a month after the trunk had been lost. Some weeks afterwards, whilst passing the hotel, the defendant's clerk called the witness in and showed him a black leather trunk, and asked him if it belonged to the plaintiff. He could not identify it.

The plaintiff also proved by Harback, that during the month of March 1855, the witness was the clerk in the office of the hotel kept by the defendant, on Baltimore street, and that

Giles *vs.* Fauntleroy.

from the 14th day of said month, until the morning of the 17th, the plaintiff was a guest in said house.

Upon cross-examination this witness states, that on the morning of the 17th day of March 1855, before 12 o'clock, M., the plaintiff called at the office, and told witness that he intended to leave, and then paid his bill up to that time, and that what he paid for the room entitled him to its use for the entire day. When the bill was thus paid, the plaintiff requested witness to keep his trunk for him "until 4 o'clock, P. M., in the afternoon of said day, and then have it sent to the steamer Virginia, or Gladiator," witness does not remember which, but that they both belonged to the same line. The plaintiff left with the witness twenty-five cents to pay the porter, and then left the said hotel and did not return again. Sometime after the plaintiff had left, witness sent word to Barnum's porter to call at 4 o'clock for said trunk, there being no regular porter connected with said hotel, and it being the custom of the house to employ said porter when baggage was to be taken away. At 4 o'clock the porter called and witness had the trunk brought down by servants and delivered to him, and told him to take it to the steamer which the plaintiff had named; witness cannot now recollect whether it was to be taken to the steamer Virginia or Gladiator, but is certain, that at the time he directed the porter to carry it to the right boat, and gave the porter twenty-five cents, the sum which the plaintiff had left with him to pay the porter. This witness further states, that when he caused the trunk to be delivered to the porter, he believes that it contained all the articles mentioned in the schedule filed by the plaintiff in this cause, and that none of them were lost while the trunk was in the hotel. He did not particularly examine the trunk when brought down, but saw it and was near it, and thinks it was in order. He saw no marks of its having been opened. That when the witness Gwinn called about the loss of the trunk, the defendant, on being informed of its loss, sent for the said porter and told him that it must be found; that after some time the trunk was found in the office of the Norfolk boats, in this city, broken open and the contents stolen, and was, in that condition, brought by said porter to the defendant's house.

The plaintiff also proved by Mr. Cassin, that before the present action was brought, he, as attorney for the plaintiff, called upon the defendant in relation to the loss of the trunk, when the defendant said to witness, that there was the trunk, pointing at a trunk lying there; the defendant made no further offer to deliver it, nor did witness demand its delivery.

The defendant then gave in evidence the following as the rules of his hotel, at the time when the plaintiff was a guest:

*"Rules of Giles' Hotel.*

"1st. Lock and bolt your door on retiring, and on leaving your room lock your door and leave the key at the office. This course the proprietor has adopted for safety, and hopes it will be strictly observed, as he will not be responsible for any loss, except when given to him or his clerk for safe keeping.

"Terms of lodging 50 cts. per day.

"2nd. Parties or families can be furnished with private parlours at an extra charge.

"3rd. Any person taking a room will be charged by the day, until notice shall be given at the office of vacating the same.

"4th. All meals served in chambers will be charged extra, except in cases of sickness.

"5th. Persons wishing to have clothes washed will give notice of the same at the office, the number of pieces, and at what time they will be wanted.

"6th. Persons intending to leave by the steamboats, cars, or other conveyances, will be pleased to give notice at the office in time for their bills to be ready, and the porter in attendance to convey their baggage.

"7th. Permanent boarders will be expected to settle their bills weekly.

"8th. Gaming of every kind prohibited.

"9th. A regular watch will be maintained during the night to admit travellers, furnish them with beds, and protect the establishment.

"The proprietor, ever anxious to promote and add to the comfort of his guests, will take it as a great favor to be informed of any inattention or neglect in any department of the establishment."

Giles *vs.* Fauntleroy.

The plaintiff then prayed the court to instruct the jury, "that if they shall find from the evidence, that the defendant kept a house in the city of Baltimore, where persons were provided with food and lodging, for money, and that the plaintiff was a guest in said house, and that he had with him, at the time, in the house, the trunk and articles of value claimed by him, and that the defendant did not deliver said trunk and its contents to the plaintiff, but that the same was lost or stolen by the negligence or mistake of the defendant, or his agent or servant, whether in said house or while being conveyed by the defendant, or his servant or agent, to any other place where the defendant had undertaken to deliver them, that then the plaintiff is entitled to recover."

Which prayer being granted by the court, the defendant excepted, and this constitutes his first bill of exceptions.

The defendant then prayed the court to grant the following instruction: "That if the jury shall find from the evidence, that the defendant was a regularly licensed hotel keeper, in the city of Baltimore, and that on the 14th day of March 1855, the said plaintiff became the guest of the said defendant, and continued his guest until the 17th day of said month; and shall further find, that on the morning of said last mentioned day, the said plaintiff gave notice to the agent of the defendant, that he intended to leave said hotel, and paid his bill to said agent, and at said time requested the said agent to have his trunk sent to the steamer Virginia, or Gladiator, and left with him twenty-five cents, the fee to be paid for the porterage of said trunk, and that the said agent, in accordance with said request, did deliver to a porter the said trunk, with direction to carry the same to said steamer, and gave the porter the said fee therefor; and shall also find, that at the time when said trunk was delivered as aforesaid, to said porter, it had not been broken open, but that the contents mentioned in the schedule were in the same trunk, at the time it left the hotel, the said plaintiff is not entitled to recover, even although they may find, that the said trunk was subsequently broken open and the contents stolen, provided they further find, that said loss was not occasioned by any collusion or fraud on the part of the said defendant or his agents."

Giles *vs.* Fauntleroy.

This instruction the court refused to give, to which refusal the defendant excepted, and this is the ground of his second bill of exceptions.

The jury gave a verdict in favor of the plaintiff for $102.55, on which judgment was rendered, and the defendant appealed.

The defendant contends: "That the plaintiff having, on the morning of the 17th March 1855, given notice to the agent of the defendant of his intention to quit the inn, and also at the time of said notice, having paid his bill, his relation as a guest was destroyed; and that the defendant is not liable in this action for any loss that may have subsequently occurred."

It is also contended by the defendant: "That the plaintiff having declared specially against the defendant as an inn-keeper, it was not competent for the court to instruct the jury, under the pleadings, that if they found a collateral undertaking on the part of the defendant, whereby he undertook to deliver the plaintiff's goods at a place without the inn, that the de-- fendant was liable in this action upon such undertaking."

It will be seen, however, that, by this appeal, we are only called upon to revise the decisions of the court below, in grant-ing the plaintiff's prayer and refusing that of the defendant. And neither of these prayers points or refers to the pleadings. Whether they were decided correctly or not, must, therefore, depend, not upon the state of the pleadings, but upon the evidence to which they alone make reference. *Dorsey vs. Dashiell*, 1 *Md. Rep.*, 207, and the cases therein referred to on the same subject.

From the testimony of the clerk, in connection with the rules of the house, it appears to have been the usage of the hotel to send the baggage of guests to steamboats or railroad cars by a particular porter, when there was such baggage to be sent. It is also in proof, that on the 17th of March, before 12 o'clock, M., the plaintiff paid his bill, which payment en-titled him to the use of the room for the *entire day;* that he then informed the clerk he intended leaving, and requested the clerk to send his baggage, at 4 o'clock in the afternoon of the same day, to a particular steamer; and at the time of making this request, the plaintiff left twenty-five cents to pay

for the porterage of the trunk.   The further testimony of the
clerk is, that at 4 o'clock on the 17th of March, the trunk was
delivered to the porter usually employed for such purpose,
with instructions to carry it to the steamer directed by the
plaintiff, and 25 cents were paid to the porter.   Some weeks
afterwards the trunk was found broken open and the contents
stolen.   When found it was at the office of the Norfolk boats
in Baltimore, and there is no proof that it ever was at the
steamer directed by the plaintiff.

With such proof before us, we cannot assent to the position
that the defendant is not liable for any loss which occurred
subsequently to the morning of the 17th of March, when the
plaintiff gave notice of his intention to leave the inn, and paid
his bill.   For he was, in fact, entitled to the use of the room
for the entire day, and his baggage was left behind, in the
care of the clerk, he undertaking to send it to the steamer, at
4 o'clock in the afternoon.

In *Dickinson vs. Winchester and another, 4 Cush. Rep.,* 114,
it appears that the keeper of a public house, in the neighbor-
hood of a railroad station, gave public notice that he would
furnish a free conveyance, to and from the cars, to all passen-
gers, with their baggage, traveling thereby, who should come
to his house as guests, and for which purpose he employed
the proprietors of certain carriages, to take all such passengers,
free of charge to them, and to convey them and their baggage
to his house.   A traveller by the cars, to whom this arrange-
ment was known, having employed one of the carriages, thus
provided, to take him and his baggage to such public house,
it was held, that if his baggage was lost or stolen through a
want of due care or skill on the part of the proprietor of the
carriage, or his driver, the keeper of the house would be liable
therefor in *assumpsit* or case.

The court thought it immaterial whether the defendants
were to be charged as inn-keepers, who assumed the care of
the guest and his baggage at the station, instead of waiting
until he came to their own door or stable, or whether they
were to be considered as common carriers of persons, and
therefore responsible for passengers' baggage.   In either case,

the profit to be derived, by the inn-keeper, from the entertainment of the traveller, as a guest, was held to be the consideration for the undertaking, and that such consideration formed the basis of an implied promise.

It was argued in defence, that the proprietor of the carriage, whose driver lost the trunk, was carrying on a separate employment, and therefore he, and not the defendants, were responsible for the loss. But notwithstanding this argument, the defendants were considered to be liable for the baggage lost or stolen through a want of due care or skill on the part of the proprietor of the carriage or his driver.

Under the peculiar circumstances of this case, we do not think that the liability of the defendant, for the baggage, as innkeeper, ceased when the trunk was delivered to the porter, but that the defendant continued to be responsible for any loss which resulted from the negligence or mistake of the clerk or porter.

The baggage was that of a guest, who, after paying his bill was entitled to the use of his room for the whole day. The agent of the landlord undertook to keep the trunk until 4 o'clock, and then send it to a particular steamer. And such an undertaking, it seems, was consistent with what a traveling guest had a perfect right to expect, in accordance with the rules and usage of the house

The conveniences and facilities held out to travellers, are matters which influence them in selecting hotels for their accommodation. And the profits which inkeepers derive from the entertainment of their guests, afford considerations for such undertakings as the one here alleged.

There was evidence tending to show, that instead of the trunk having been taken to the steamer directed by the plaintiff, it was carried to the office of the Norfolk boats, and there broken open and its contents stolen; and if the jury believed it to be so, they might have inferred, that the loss was occasioned by the negligence or mistake of the clerk of the hotel, or of the porter. And for each of them, as his agent, the defendant is responsible.

Notwithstanding the views which have been expressed, we

Giles *vs.* Fauntleroy.

think the plaintiff's prayer should not have been granted. It fully authorized the jury to understand, that if they believed the matters presented for their consideration, to be true, the plaintiff was entitled to recover for the trunk, and the whole contents thereof. And that they did so understand, is shown by the amount of the verdict. The articles contained in the trunk, however, are not, *all of them*, such as can be properly considered the baggage of a traveller; and for those which are not such baggage, the defendant is not responsible.

In *Pettigrew vs. Barnum, et al.*, 11 *Md. Rep.*, 449, 450, the liability of an innkeeper for a traveller's baggage, was under consideration. And the court then said: "We do not think the term embraces merchandize or other valuables not designed for use, or personal convenience on the journey. It is not within the implied contract of the landlord, that he will be responsible for all goods which may be brought to his house, merely because they happen to be in a trunk." It is also said: "In the present case, we find that the trunk contained silver knives, forks and spoons. For them the appellees were not responsible. If a party may recover for these, why may he not for many dozens of the same articles, or for any description and amount of plate."

According to the ruling in that case, there were articles in the trunk of the plaintiff, for which the defendant cannot be held responsible, the same not properly constituting patrs of a traveller's baggage. These are the Colt's pistol and the silver tea spoons. And inasmuch as there is no proof that the plaintiff was either a physician, a surgeon, or a student of medicine, we do not think he could recover for the case of surgical instruments or the tonsil cutter.

The defendant's prayer was properly refused. If it had been granted, the plaintiff would have been excluded from any right to recover, if the jury believed the matters therein set forth, unless they also believed, that the loss was occasioned by *collusion or fraud*, on the part of the defendant or his agent.

Conceding the matters stated in the prayer to be all true; and even conceding that the relation of guest ceased, when the plaintiff left the hotel, still it would have been erroneous

to instruct the jury, that the plaintiff was not entitled to recover, unless they believed the loss was occasioned by *collusion or fraud,* on the part of the defendant or his agent.

It follows from what has been said, that the judgment must be reversed and a *procedendo* ordered.

<div align="center">

*Judgment reversed and procedendo awarded.*