## Michael Treiber *vs.* Charles Burrows.

*Liability of Innkeepers for Money and Goods lost or stolen—Evidence.*

An innkeeper, at common law, is bound to take more than ordinary care of the goods, money and baggage, of his guest, brought within his inn, and is responsible for loss or damage to the same by his servants, domestics, other guests, or persons unknown; and whether delivered into the custody of the innkeeper or not, so that they be brought within the inn, actually or constructively, according to the character of the articles to be kept.

The rigor of this rule has, however, been materially relaxed in this State by decisions of this Court. Money in the trunk of a guest at an inn, to constitute a part of his baggage for which the innkeeper is responsible, should be of such an amount only as would be convenient to meet his traveling expenses; and to arrive at this, the condition of the guest, his mode of life, his habits, tastes, the nature, character and objects of his journey, must be taken into consideration by the jury; for it is the province of the jury in such a case to determine the ques-

Treiber *vs.* Burrows.

tion of sufficiency under such directions and limitations as the Court may prescribe. And the same observations will apply to a chest of tea, as an article necessary and suitable, or not, for the journey, under the circumstances.

Innkeepers, in relation to the baggage of their guests, stand on the same footing with carriers of passengers.

In a suit brought by a guest to recover from the landlord of the hotel where he was stopping, for the loss of a trunk and its contents, including $1,500 in bank notes, it being sought to be shown that the plaintiff had said his means were very limited, and that he was a very poor man, it was competent for him to show that some months previous to his loss he had money, in Canada bank notes, to an amount greater than the sum alleged to have been lost.

APPEAL from the Circuit Court for Allegany County.

This action was brought by the appellee to recover the value of a trunk and its contents, and a chest of tea, alleged to have been lost while he was stopping, as a guest, at the Revere House, a public hotel in Cumberland, of which the appellant was the proprietor. The trunk, besides clothing, contained $1,500 in ten-dollar bills of the Bank of Upper Canada.

*1st Exception:* The appellee (plaintiff below,) after having introduced evidence to maintain the issue joined on his part, offered in evidence a commission executed in Upper Canada, by which he proved that in July, August and September, 1861, he lived in Stratford, Canada West, and that in July of that year he had on deposit, in the Bank of Upper Canada, at that place, the sum of $2,200; that on the 29th of August following, he drew out of said bank $2,000, and on the 6th of September following he drew out the balance, and that said sums were paid in bills of the bank of Upper Canada, which were equivalent to gold, dollar for dollar. The defendant objected to the admissibility of this evidence, but the Court (SMITH, J.) overruled the objection, and permitted the evidence to be read to the jury; and to this ruling the defendant excepted.

*2d Exception:* Both parties having closed their case, the plaintiff asked the following instruction: That if the jury shall find from the evidence in the cause, that the defendant kept a hotel at Cumberland, and that the plaintiff, with his family, stopped at said hotel as a guest, and brought the trunk and contents, and tea chest and contents, in controversy, to said hotel with him, and that they were there lost to the plaintiff while he was such guest, then the plaintiff is entitled to recover the value of the same, even though they may believe that the plaintiff did not deliver them to, or acquaint the defendant with them. Which instruction the Court gave. The defendant offered five prayers, the first and fourth of which the Court granted; the others were as follows:

2d. That if the jury find, from the evidence in the cause, that the plaintiff was a guest of the defendant, as alleged in the declaration in this cause; that the trunk of the plaintiff was brought by him into the hotel of the defendant, while the plaintiff was a guest in said hotel; that the said trunk contained the bank notes testified to by the plaintiff, and that said trunk and its contents were lost while so in said hotel, the plaintiff cannot recover for said bank notes in this action, unless they shall also find that the said bank notes were designed by the plaintiff for his use, while on his journey or while a guest in said hotel, or unless they shall find that they were lost by the fraud or negligence of the defendant.

3d. That if the jury find the facts stated in the above prayer, and also find that the plaintiff had on his person at the time of his arrival at the hotel of defendant four or five hundred dollars in money of this country, and that the money in the trunk was in Canada money, they may find that the money of this country was intended by him for use on his journey, and was sufficient for that purpose, and if they do so find, then the plaintiff cannot recover

for the money in the trunk, unless they find it was lost by the fraud or negligence of the defendant.

5th. That if the jury find that the plaintiff left Upper Canada and came to Cumberland, and brought the caddy or box of tea in controversy with him, and that said caddy or box had not been opened when he arrived at Cumberland, and that he intended renting a house and going to housekeeping in Cumberland, they may find that said tea was not intended for use while on his journey or while he was a guest in the hotel of the defendant, (if they find he was such guest,) and if they do so find, then the plaintiff cannot recover for said tea in this action, unless they shall also find that it was lost by the fraud or negligence of the defendant.

These prayers the Court rejected ; and to the ruling of the Court in granting the prayer of the plaintiff and rejecting the prayers of the defendant, the defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before Bowie, C. J., Bartol and Weisel, J.

*J. H. Gordon* for appellant.

The points for the decision of this Court are presented by the ruling of the Court below, in granting the prayer of the plaintiff, and in rejecting the second, third and fifth prayers of the defendant, and are simply these :

Does a large sum of money which a traveller or guest brings with him in his trunk into an inn, and which is not necessary for his comfort or convenience while on his journey, or while a guest in the inn, constitute part of his baggage, for which the innkeeper is responsible as such ? And does a chest of tea which is not used or intended for use on his journey, or while a guest at the inn, constitute part of the baggage, for which the innkeeper is so responsible ?

It appears from *Calye's case*, 8 *Coke*, 32, that this is one of the cases for which a writ was provided under the *Statute of Westminster* 2, 13 *Ed.* 1, *Stat.* 1, *chap.* 24, *Stat. at large, page* 95.

The writ is found in *Fitzherbert's Nat. Brev.* 94, *B.*, where the rule is laid down as follows: "If a man be· lodged at any inn, and any of his goods be taken or stolen from thence by a stranger, he should have an action upon the case against the innkeeper, and the writ shall be such."

By the civil law, innkeepers were held to a responsibility similar to that of the common law. And by both systems it was based on the principles of public policy and necessity, which placed the traveller or guest, who was generally a stranger, with his goods, under the control and protection of the innkeeper. *Story on Bail.*, *secs.* 464, 471.

And as the extraordinary liability of the innkeeper arose from necessity, it can only be binding to the extent of the necessity which induced its adoption, and the liability must cease when the reason of it ceases to have force. In going back to the time of Edward 1st, a period of nearly 600 years, to inquire into the relations then existing between innkeeper and guest, at that early period, when wayfarers and travellers passed from one part of England to another on foot, or on horseback, carrying with them only sufficient clothing and money to supply their necessary wants, while on the journey, we can easily understand why the early authorities speak of the responsibility of the innkeeper, for the goods of his guest generally, without distinguishing between the character of goods that would probably be necessary for the convenience or comfort of a traveller or guest, and those which would not ; or the quantity of such goods as were· necessary, and that might be required during his journey, or while at the inn as a guest.

Suppose a merchant from one of the inland towns of the

Treiber *vs.* Burrows.

State, should go to Baltimore, and purchase five thousand dollars worth of dry goods, load them into his six-horse wagon, and start homeward with them; and should stop at one of the country inns on his way, to stay over night, and receive entertainment for himself and his horses during the night. He would be a guest, and his goods would all be *infra hospitium.* Can it be said, that the innkeeper would be held to the strict rule in that case, that is insisted upon here? I think no Court at this day would hold him responsible for the loss of the goods, unless he was guilty of some other misconduct than would make him liable for the necessary baggage of a guest.

The Court of Appeals has therefore established a very reasonable and proper distinction between baggage, that is necessary for the convenience and comfort of a traveller, while on his journey as a guest at an inn, and other articles which he might have with him, but which could not rightly be regarded as such. *Pettigrew vs. Barnum et al.,* 11 *Md. Rep.,* 434, 449; see, also, *Clark & Co. vs. Spence,* 10 *Watts,* 335; *Pardee vs. Drew,* 25 *Wend.,* 459; *Story on Bailments,* sec. 499; *Johnson et al. vs. Stone,* 11 *Hump.,* 419; *Dibble vs. Brown and another,* 12 *Georgia,* 224; *Orange County Bank vs. Brown,* 9 *Wend.,* 115; *Hawkins vs. Hoffman,* 6 *Hill,* 589; *Giles vs. Fauntleroy,* 13 *Md. Rep.,* 126.

*William Walsh* for the appellee:

The appellant objected to the evidence taken under a commission to Canada, for the purpose of proving that in the summer of 1861 the plaintiff had money in Canada bank notes to an amount greater than the amount alleged and proved by his own evidence to have been lost when his trunk was lost at the defendant's hotel. This evidence was admissible not only as confirmatory of the testimony of the appellee, but also as rebutting the testimony subsequently offered by the appellant, to show that the appellee had said his means were very limited, and that he

was a very poor man. The evidence was also admissible, because it proved the value of the lost money to have been equal to gold. The defendant objected to the *whole* of the evidence taken under the commission; and if any part were admissible the objection was not sustainable.

The question presented by the second bill of exceptions, and raised by the prayers in the case, involves the responsibility of innkeepers for the money and other property of a guest taken within the inn.

In this case fifteen hundred dollars in bank notes were in the appellee's trunk, and were lost to him after he became a guest, and the trunk was taken within the inn. The appellee will contend that the liability of the innkeeper extends to all the property lost in this case, including the money as well as the small chest of tea. The care of the goods is a part of the contract of the innkeeper. 2 *Kent's Comm.*, 592; *Story on Bailments, sec.* 470; *Towson vs: The Havre-de-Grace Bank*, 6 *H. & J.*, 47.

An attempt is made to limit the liability of the innkeeper to "baggage," or such wearing apparel necessary for the use of a traveller while on his journey.

The innkeeper is responsible for *all* the moveable goods of the guest regardless of their character, *kind* or *quantity*, or the *purposes* for which the guest carries the goods with him; and for money as well as any other property, whether the money is for his use as a traveller or not. The appellee in this case had broken up his residence in Canada, and intended to go even further south than Maryland, and when he arrived at Cumberland had not made up his mind to remain there. He was therefore a traveller, who was moving to a new home; consequently he was taking his effects and money with him. His destination was Virginia or Georgia. The rebellion was then flagrant. Draft exchanges were not to be had on the banks in the South. The appellee was moving to the South, and was therefore *obliged* to take his money with

him. It was in the most compact shape, in Canada bank notes, equal to gold. He was not carrying money *unnecessarily*, or in larger amounts than his " circumstances " justified or required.

The words of the writ are : *" eorum bona et catalla infra hospitium,"* and *bona et catalla* include deeds, charters, bonds and evidences of debt. 5 *Resolution in Calye's Case*, 8 *Coke's Rep.*, 32 ; *Story on Bailments, sec.* 481 ; *Bennet vs. Mellor*, 5 *Term. Rep.*, 273 ; *Richmond vs. Smith*, 8 *Barn. & Cress.*, 9 ; *Burgess vs. Clements*, 4 *Maule & Selwyn*, 306 ; *Kent vs. Shuckard*, 2 *Barn. & Adolp.*, 303 ; *Armistead vs. Wilde*, 17 *Adolp. & Ellis, N. S.*, 261.

This last case, decided in 1851, fully covers the present case. It, in effect, decides that if a traveller leaves several hundred pounds in a box in the common traveller's room, and it is stolen, the landlord is responsible for the loss.

In our case the proof is by the appellee, that he pointed his trunk out to the appellant, told him it was valuable, and requested him to have it sent to his room ; no display of money before strangers. The landlord replied that it was as safe there as in his bed-room. *Clute vs. Wiggins*, 14 *Johnson*, 175; *Berkshire Woolen Company vs. Proctor*, 7 *Cushing's Rep.*, 417.

The cases of *Pettigrew vs. Barnum*, 11 *Md. Rep.*, 434, and *Giles vs. Fauntleroy*, 13 *Md. Rep.*, 127, are relied on by the appellant. In these cases the Court has decided that knives, forks and spoons, pistols or surgical instruments, unless the owner were a surgeon or a student of surgery, were not such articles as an innkeeper would be responsible for. In the first of these cases a fancy purse, valued at forty dollars, containing money, constituted a part of the contents of the robbed trunk, and neither was excluded by the Court from the liability of the innkeeper.

In the latter case it is to be inferred that the innkeeper would have been held responsible for the care of

surgical instruments if the plaintiff had been a surgeon, or even one studying surgery. This was not upon the ground that he would have use for such things while travelling, but because when *at home,* if a surgeon, he would need them, or if a student of surgery would need them at some future day ; and therefore had a right to provide himself with them, and to take them in his trunk.

Is not the case of a *traveller moving* from Canada to the South during the rebellion, when no more convenient mode existed of carrying his funds with him, indeed, no other mode whatever, within the principle of the surgeon, as put by the Court Appeals? If the plaintiff in this case had gotten to the South in January, 1862, would his sum of fifteen hundred or two thousand dollars have been more than sufficient to have kept him and his family until the surrender of Lee, in April, 1865, a period of over three years? He may have designed to purchase property, or have gone into business.

All the cases cited by the Court of Appeals in the case of *Pettigrew vs. Barnum,* 11 *Md. Rep.,* 450, are cases against *carriers of passengers,* and not one of them against an innkeeper. Although the responsibility of *common carriers* and innkeepers are very analogous, yet the *carriers of passengers* are not common carriers ; only carriers of *goods* are common carriers. They were not liable, therefore, for an injury to a passenger, unless there was some negligence or defect of means on their part. *Camden, &c. Co., vs. Burke,* 13 *Wendell,* 611 ; *Hollister vs. Nolen,* 19 *Wendell,* 234 ; *Cole vs. Goodwin & Story,* 19 *Wendell,* 251 ; *Stokes vs. Saltonstall,* 13 *Peters,* 181 ; *Stockton vs. Frey,* 4 *Gill,* 406.

This last case shows that the liability of carriers of passengers is entirely different from that of common carriers or carriers of goods.

Originally, " the proprietors of stage coaches were not liable for the traveller's baggage, unless a distinct price

had been paid, on the ground that the carrier is liable only in respect of his reward, and the compensation should be in proportion to the risk ; latterly a reasonable amount of baggage, by common usage, was deemed to be included in the fare of the passenger, but the Courts should not allow this custom to be abused, and under pretence of baggage include articles not within the scope of the term or intent of the parties, thereby defrauding the carrier of his just compensation, besides subjecting him to unknown hazards." *Pardee vs. Drew,* 25 *Wendell,* 459.

This is the case relied on by this Court in *Barnum vs. Pettigrew;* and was the case of a carrier of passengers, who, by the common law, was not originally responsible for "baggage" at all, but by usage lately adopted, was held responsible for what was known as "baggage," as contradistinguished from merchandize or money.

The *original immunity* of the passenger carriers for any kind of goods was subsequently converted into liability for *personal baggage* proper.

See the cases of *Hawley vs. Smith,* 25 *Wendell,* 642, *and Peet vs. McGraw,* 25 *Wendell,* 653 ; cases against innkeepers.

The distinction between a common carrier and a carrier of passengers is given in the notes to the case of *Coggs vs. Barnard,* 1 *Smith's Leading Cases, English notes, page* 101, *mar.* 174, *top.* "A common carrier is a person who undertakes to transport from place to place for hire the *goods* of such persons as think fit to employ him."

"A person who conveys passengers only, is not a common carrier." *Story on Bailments, secs.* 495, 590.

Common carriers of goods were by the common law in England liable for money, coin, bank notes and all other valuables, although the value of the package was not disclosed to the carrier. This was changed by 11 *Geo.* 4, *and* 1 *Wm.* 4, *cited in* 1 *Smith's Leading Cases, English notes,* 102, *mar.* 175, *top.* The liability of an innkeeper

was the same ; both are insurers of property committed to their care. *Mason vs. Thompson,* 9 *Pickering,* 280.

It is an error to undertake to deduce from cases against carriers of passengers, for loss of " baggage," principles, and apply them to cases against innkeepers. The analogy only exists between innkeepers and *common carriers* or carriers of goods.

We venture to say, that no case can be found in which the liability of an innkeeper has been limited, so as not to embrace *all goods* brought into the inn, except the two cases in Maryland, and in deciding these cases, we respectfully submit, that our Court was led into error by failing to note the distinction between the liability of carriers of passengers and common carriers; and by an application to innkeepers, of principles decided as to carriers of passengers and not common carriers; when the two classes of cases were wholly distinct, and rest upon different principles. The liability of passenger carriers for "baggage" of passengers, as common carriers thereof, was never extended beyond "baggage" as such ; and even that only in modern times. *Story on Bailments, sec.* 499. But the liability of innkeepers for *all goods* brought within the inn by the guest, was an original common law liability, and never was confined to " baggage," which has a definite meaning in the law, and applies to wearing apparel, including jewels, ornaments, &c., necessary for a party's use. We assume that this Court will not extend the two cases above mentioned, further than they now go. Neither of them embraces a case of money in the trunk of a moving traveller.

An innkeeper is one who keeps a common inn for the accommodation of guests, and their goods and chattels, and this, though he gets no payment for his care of the goods. *Story on Bailments, sec.* 470.

The distinction between the liabilities of innkeepers and carriers of passengers for money, is clearly taken and

strongly stated in the cases of *Berkshire Woolen Co. vs. Proctor,* 7 *Cushing,* 417, *and Jordan vs. The Fall River Railroad Company,* 5 *Cushing,* 69.

It is submitted, with great confidence, that the present case is entirely covered by the case of *Towson vs. The Havre-de-Grace Bank,* 6 *H. & J.,* 47, where the innkeeper was held liable for the money. The circumstance, that the money in that case was delivered to the landlord, is not in any manner made the ground of the decision ; but the case is decided upon the general liability of the landlord.

On the former appeal in this case, this Court said that a delivery of the goods of a guest into the custody of the innkeeper, was not necessary to charge him with them, for although the guest did not deliver them, or acquaint the innkeeper with them, still the latter was bound to pay for them if they were stolen or carried away. This shows that the liability is the same, whether the property is intrusted to the innkeeper or not. This view of the case is sustained by the Act of 1854, chapter 323.

The third section of that Act exempted innkeepers from liability for money or plate not deposited by the guest with them for safe keeping.

Now, if the liability of the innkeeper for money, did not exist by the common law, where no safe was provided, and the money not put into the custody of the landlord, why was the statute passed? The statute assumes the existence of the common law liability ; and its object was to exempt innkeepers in cities and towns, containing a population over five hundred, from liability, for *money* and *plate,* if they provided a safe, and gave the notice provided by the Act. It was not deemed necessary to extend this conditional exemption to smaller towns, because rogues were not so likely to congregate there, as in the hotels of the large cities, where, from the great crowds who assemble, the innkeepers cannot distinguish their guests from

other persons.    Even the policy of this Act was not deemed good, as it was not codified, and was repealed.

The principle for which the appellant contends that innkeepers are liable for such sums only as are necessary and designed for the ordinary travelling expenses of the guest, is unsupported by authority, and wholly inconsistent with the principle upon which the liability of an innkeeper rests.

WEISEL, J., delivered the opinion of this Court.

This case came before this Court on a former appeal, in which the present appellee was then the appellant, and which was sustained upon an error in the only ruling of the Court below then under examination, and that was the want of evidence to support the instruction relative to the neglect and carelessness of the guest himself by which the trunk was lost.    That being an appeal by the present appellee, no objection was of course taken by him to the fact that the prayer covered the trunk and all its contents set out in the declaration, and consequently the particular question which has been raised and discussed in the present appeal was not brought to the notice of the Court in that case or passed upon.    See *Burrows vs. Treiber*, 21 *Md.*, 320.    What constitutes *in Maryland* the baggage of the guest of an inn is distinctly presented by the prayers in this appeal, and this Court is called upon in this examination to review its own decisions upon this somewhat difficult and yet practically important branch of the law.

The verdict of the jury in the present case was for the sum of $1,980.25, which included the sum of $1,500 in the notes of the Bank of Upper Canada *in the trunk*, and the value of a separate chest of tea.

The prayer of the appellee, which was granted by the Court below, contained the instruction that the innkeeper, Treiber, was answerable for the value of the trunk and all

its contents, including the money or bank notes, and the tea chest and its contents, if they found that the appellee was his guest, and brougnt the same with him into his hotel, and that they were there lost to him while such guest. The defendant's second and fifth prayers exempt the defendant from responsibility for the loss of these articles, unless the jury should find that they were designed by the plaintiff for his use while on his journey, or while a guest in the hotel, or unless they should find that they were lost by the fraud or negligence of the defendant. His third prayer claimed exemption from responsibility for the money in the trunk, if the jury should find that the plaintiff had four or five hundred dollars in money of this country on his person, which was intended by him for use on his journey, and was sufficient for that purpose, unless they found it was lost by the fraud or negligence of the defendant. These three prayers of the defendant were rejected by the Court below.

The defendant took two exceptions; the first, to the admissibility of certain proof taken in Canada under a commission; the second, to the ruling of the Court in granting the prayer of the plaintiff, and rejecting the second, third and fifth prayers of the defendant as noticed above.

An innkeeper at common law is bound to take more than ordinary care of the goods, money and baggage of his guest brought within his inn, (*infra hospitium,*) and is responsible for loss or damage to the same by his servants, domestics, other guests or persons unknown; and whether delivered into the custody of the innkeeper or not, so that they be brought within the inn, actually or constructively, according to the character of the articles to be kept. This is the law established by Calye's Case, in the time of Elizabeth, 8 Coke, 32, and adhered to in England and in this country, until departed from more

recently in this State. *Bennet vs. Mellor*, 5 *Term.*, 273 ; *Burgess vs. Clements*, 4 *Mau. & Selw.*, 306 ; *Kent vs. Shuckard*, 2 *Bar. & Ad.*, 803 ; *Richmond vs. Smith*, 8 *Bar. & Cress.*, 9 ; *Armistead vs. Wilde*, 17 *Ad. & Ellis, N. S.*, 261 ; *Clute vs. Wiggins*, 14 *John.*, 175 ; *Berkshire Woolen Company vs. Proctor and another*, 7 *Cush.*, 417 ; *Towson vs. Havre-de-Grace Bank*, 6 *Har. & John.*, 46 ; *Story on Bailments, secs.* 470 *to* 487 ; 2 *Kent's Comm.*, 592–596, *side*, and cases there referred to. The ground of this responsibility is the profit which the landlord, or, more technically, the innkeeper receives for entertaining his guest, and its rigor is justified and maintained, as observed by Sir William Jones "on the great principle of public utility, to which all private considerations ought to yield."

The rigor of this rule has, however, been materially relaxed in Maryland by the decision of this Court in the case of *Pettigrew vs. Barnum*, 11 *Md.*, 434, and subsequent cases. That was a suit by a guest of Barnum's City Hotel against its proprietors for the loss of various articles from the trunks of the plaintiff whilst such guest, and this Court, in full bench, unanimously determined (Tuck, J., delivering the opinion) that the defendants were not responsible for silver knives, forks and spoons, which were among the missing or stolen articles. These were wedding presents received whilst on a bridal tour abroad, from which the plaintiff had returned, and was then on his way home in South Carolina. The Court in this case departed from the rigor of the common law, and incorporated the principle which governs carriers of passengers in reference to their baggage, limiting or restricting the responsibility of the innkeeper for the baggage of his guest to that of the carrier of a passenger—putting both, indeed, upon the same ground in this respect. "It is not within the implied contract of the landlord," said the learned Judge, "that he will be

responsible for all the goods which may be brought to his house, merely because they happen to be in a trunk." (p. 449.) And the citations made by the Court (p. 450) in support of the position taken and enunciated in that case, are all, without exception, cases of carriers of passengers, and of American authority. This case was decided at December Term, 1857, but originated in the inferior Court on the 15th of February, 1854, a few days prior to the passage of the Act of 1854, chapter 323, to the introduction and enactment of which this occurrence at Barnum's Hotel most probably led. The same question arose in the case of *Giles vs. Fauntleroy*, heard and again decided by a full Court at December Term, 1858, 13 *Md. Rep.*, 126, when, upon the ruling in the case of *Pettigrew vs. Barnum*, the landlord was held not to be reponsible for silver teaspoons and a Colt's revolver, part of the contents of a rifled trunk, and also for a case of surgical instruments and a tonsil cutter, inasmuch as there was no proof in that case that the plaintiff was either a physician, surgeon or student of medicine, (p. 139.)

In this view of the law it is no easy matter to determine what constitutes the baggage proper of a traveller or the guest of an inn. All the authorities agree in pronouncing it difficult. Yet their definitions and explanations must furnish us with the proper idea conveyed by that term. The opinion of this Court, in *Pettigrew vs. Barnum*, states that " the baggage of a traveller depends so much on circumstances, such as his position, habits, taste and mode of travelling and living, that it is easier to say, in a given instance, whether an article is embraced, than to lay down a general rule that will apply to all cases. We do not think (adds the Court) the term embraces merchandize or other valuables not designed for use or personal convenience on the journey." 11 *Md. Rep.*, 449. What is usually carried as baggage, is said by BRONSON, J., to be a good test for determining what things

fall within the rule.   He was not for extending it beyond what a traveller usually carries with him for his personal convenience in the journey, and said it neither included money nor merchandize, and doubted even whether money to pay travelling expenses was embraced, as that was generally carried about the person and not in trunks or boxes. Still he would not confine the rule to wearing apparel, brushes, razors, writing apparatus and the like, deemed indispensable by most persons, but would extend it to books for instruction or amusement by the way, a gun or fishing tackle.   6 *Hill*, 589, 590, *Hawkins vs. Hoffman*. And NELSON, J., endeavoring to define the same subject, observes, "it may be safely asserted that money, except what may be carried for the expenses of travelling, is not included in the word *baggage*."   *Orange County Bank vs. Brown*, 9 *Wend.*, 117.   In the case of 10 *Watts*, 335, *Clarke & Co. vs. Spence*, the Court, in determining to what extent the plaintiff should be allowed to prove the contents of a lost trunk, would not extend the privilege beyond its legitimate limits, applying it with great force to wearing apparel and every article necessary or convenient to the traveller, a lady's jewelry and other articles more easy to conceive than enumerate.   "Nor is it proper," remarked the Judge delivering the opinion, "to restrict the articles which the plaintiff can thus prove within narrow limits.   Much is left to the jury in judging of the witness' credibility to prevent injury to the defendant."

In Tennessee the term *baggage* has been defined as including articles of necessity and personal convenience, usually carried by passengers for their personal use ; and what these may be will very much depend upon the habits, taste and resources of the passenger ; it also includes money to that extent which may be convenient to meet the travelling expenses.   11 *Hump.*, 419, *Johnson vs. Stone*.

The various examples from these and other cases are

well grouped and subjected to much critical observation in the case of *Dibble vs. Brown*, 12 *Georgia*, 224, 227. The conclusion arrived at in that case is, that "the quantity and character of baggage must depend very much upon the condition in life of the traveller, his calling, his habits, his tastes, the length or shortness of his journey, and whether he travels alone or with a family." And then the Court adds: "If we agree further with Judge STORY, and say the articles of necessity or convenience must be such as are *usually* carried by travellers for their personal use, we are still at fault, because there is in no State of this Union, nor in any part of any one State, any settled usage as to the baggage which travellers carry with them for their personal use. The quantity and character of baggage found to accompany passengers are as various as are the countenances of the travellers." Judge STORY's deduction from all the cases, and commented on in the case cited from the Georgia Reports, is that "by baggage we are to understand such articles of necessity or personal convenience as are usually carried by passengers for their personal use, and not merchandize or other valuables, although carried in the trunks of passengers, which are not designed for any such use, but for other purposes, such as a sale and the like." *Story on Bail.*, sec. 499 ; and see also 25 *Wend.*, 459, *Pardee vs. Drew.*

Upon these authorities this Court based their decisions in the cases of *Pettigrew vs. Barnum* and *Giles vs. Fauntleroy ;* and with their aid we are of opinion that money in the trunk of a guest at an inn, to constitute a part of his baggage for which the innkeeper is responsible, should be of such an amount only as would be convenient to meet his travelling expenses ; and to arrive at this the condition of the guest, his mode of life, his habits, tastes, the nature, character and objects of his journey, must be taken into consideration by the jury ; for it is the province of the jury, in such a case, to determine the question of suffi-

ciency, under such directions and limitations as the Court can prescribe. And the same observations will apply to the chest of tea, as an article necessary and suitable, or not, for the journey under the circumstances. That such an inquiry is for the jury, under proper limitations to be explained by the Court, this Court has more recently determined in the case of *Maltby vs. Chapman*, decided in June, 1866, and which was a case in which the landlord claimed exemption under the 5th and 6th Sections of Article 70 of the Code of Public General Laws.

In applying the law as thus settled in Maryland to the case now before us, we think the Court below erred in granting the plaintiff's prayer, and the defendant's second, third and fifth prayers, which were rejected, were correct and ought to have been granted.

Whatever inconvenience or loss the travelling community may be subjected to in Maryland, by these adjudications, as not furnishing the strict protection to the moveables which they may carry with them as baggage, afforded by the rule of the common law applicable to the relation of innkeeper and guest, may be obviated by an observance of the 5th and 6th sections of the 70th Article of the Code, which is a codification, and in some particulars, an enlargement of the Act of 1854, chapter 323.

The first exception taken to the admissibility of testimony returned with the commission to Canada was not relied upon by the appellant in his brief or in the argument. We can see no objection to that proof, and think it was properly admissible.

It may be proper to state that a member of this Court, as now constituted, presided in the Court below when the case between these litigants was first tried, and he was then governed in his rulings by the common law, as understood before the decision of *Pettigrew vs. Barnum*. Upon a more full examination of the law as declared in

Maryland by that decision, and since followed, he now concurs with his brethren on the bench, that it is the duty of this Court to adhere to these decisions, and place inn-keepers, in relation to the baggage of their guests, on the same footing with the carriers of passengers. The travelling public will be subject to the same law at hotels and in the public conveyances, affording the same protection in both cases, and operating hardship to none. He, who has valuables beyond ordinary baggage, always has it in his power, by special contract or arrangement, and for a suitable compensation, to secure their safety, if he is unwilling to take the risk upon himself.

*Judgment reversed*
*and procedendo awarded.*

(Decided 29th May, 1867.)